UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 07bk12776 |
|  | ) |  |
| D/C Distribution, LLC, | ) | Chapter 7 |
|  | ) |  |
| Debtor. | ) | Judge Timothy A. Barnes |
|  | ) |  |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

      This matter comes before the court on the Motion for Relief from the Automatic Stay as to Certain Asbestos Claimants [Dkt. No. 224] (the "Motion") filed by Roderick Johnston, Rosalyn Johnston, Gary Neto, Larry Walker (through his estate), Thomas Sinclair, Carlton Keathley and Douglas Kuznik (collectively, the "Claimants"). The Claimants seek relief from the automatic stay to pursue in another forum asbestos-related personal injury claims against D/C Distribution, LLC (the "Debtor") nominally, though they seek not to recover monetarily from the Debtor or its bankruptcy estate but rather to recover solely to the extent of and from any available insurance coverage. Kaanapali Land Company, LLC ("KLLLC"), the United States of America, on behalf of the Department of Defense, the Department of the Navy, and the Environmental Protection Agency (the "United States"), Fireman's Fund Insurance Company ("FFIC" and together with KLLLC and the United States, the "Objecting Parties") and Alex D. Moglia, chapter 7 trustee (the "Trustee"), filed objections or responses to the Motion. The Motion has been fully briefed and the parties have appeared before this court on April 13, 2020 (the "Hearing"), at which Hearing the court heard oral argument on the Motion. The Motion, therefore, is ripe for determination.

      For the reasons stated below, the Claimants have established both cause for relief from the stay and that the Debtor lacks equity in the subject property. The Motion will, therefore, be granted by separate order entered concurrently with this Memorandum Decision.

JURISDICTION

      The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

      A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion

or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall*, 564 U.S. 462 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

Motions to terminate, annul, or modify the automatic stay are core proceedings arising under the Bankruptcy Code in which the bankruptcy court is empowered to enter final orders. 28 U.S.C. § 157(b)(2)(G); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976–77 (N.D. Ill. 1992); *In re Quade*, 482 B.R. 217, 221 (Bankr. N.D. Ill. 2012) (Barnes, J.), *aff'd*, 498 B.R. 852 (N.D. Ill. 2013). The automatic stay arises from federal statutory law and only within the context of a bankruptcy case. As such, the court has constitutional authority to hear and determine any motion seeking relief form the automatic stay, including the Motion. *The Klarchek Family Tr. v. Costello* (*In re Klarchek*), 508 B.R. 386, 389 (Bankr. N.D. Ill. 2014) (Barnes, J.). Further, no party has objected to the court entering final orders on the Motion and thus all parties have impliedly consented to this court's jurisdiction. *See Wellness*, 135 S. Ct. at 1939; *Richer*, 798 F.3d at 490.

Accordingly, determination of the Motion is within the scope of the court's jurisdiction and statutory and constitutional authority.

HISTORY

This controversy, much like this case, has existed for some time. The Debtor filed for chapter 7 bankruptcy relief over thirteen years ago, on July 17, 2007. The Debtor, formerly known as AMFAC Distribution Corporation, was the successor-in-interest by merger to three California corporations, who merged between 1976 and 1979. The companies are described by the Claimants as plumbing supply houses.

The Claimants allege that they have sustained asbestos-related injuries due to exposure caused by the Debtor or its pre-merger predecessors and that the automatic stay in this case is preventing them from seeking redress. As such, they ask for relief from that stay to seek recovery against insurance policies under which the Debtor and/or its predecessors were defended and indemnified during the relevant time periods (the "Policies"). Recovery will only be sought to the extent of and from insurance coverage.

No one disputes that the Debtor's bankruptcy estate has limited funds. This means that the Policies are one of the few potential sources of recovery for eligible claimants. The coverage contained in the Policies is described by the Trustee as "ample" and likely somewhere in excess of $100 million. The Trustee argues that he cannot, however, determine the insurance policy or policies potentially triggered by the Claimants' claims without further information.

Further complicating the matter, this is not the first time this dispute has come before the bankruptcy court. A nearly identical motion was filed in this case in 2015. Motion for Relief from the Automatic Stay [Dkt. No. 86] (the "Prior Motion"). The Prior Motion sought relief from the automatic stay for eight asbestos claimants, two of which are involved with the present Motion.[1] Over the opposition of the same Objecting Parties and the Trustee, the judge to whom this case was then assigned granted the Prior Motion. Order re: Motion for Relief from the Automatic Stay [Dkt. No. 95] (the "Prior Order"). Each of the Objecting Parties and the Trustee filed motions to reconsider the Prior Order, all of which were withdrawn or denied. Orders [Dkt. Nos. 110, 111, 113, 114]. Thereafter, the Objecting Parties filed appeals of the Prior Order to the District Court. Notices of Appeal [Dkt. Nos. 119, 123, 126].

On appeal, the District Court found that the bankruptcy court had not fully applied the factors set forth in *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991), and reversed and remanded the Prior Motion for further proceedings. *In re D/C Distribution LLC*, Case Nos. 15 C 5092, 15 C 5146, 15 C 5150, 2016 WL 1073094 (N.D. Ill. March 18, 2016) (the "Appellate Opinion").

Just prior to the issuance of the Appellate Opinion, the bankruptcy case was reassigned from the prior judge to the undersigned, Reassignment Order [Dkt. No. 159], so that this case could be heard alongside the pending, prior case of the Debtor's affiliate, Oahu Sugar Company, LLC ("Oahu Sugar").[2] No party, however, informed the undersigned of the unresolved status of the Prior Motion in light of the Appellate Opinion.[3] The case thus continued without any resolution of the issues raised in the Appellate Opinion.

For many years thereafter, this case and the Oahu Sugar case slowly ground on as the Objecting Parties and the Trustee, both in his capacity as chapter 7 trustee of this case and also in his capacity as the chapter 7 trustee appointed in Oahu Sugar's case, attempted to settle disputes regarding environmental response and defense costs related thereto. A year ago, on the motion of the Trustee in his capacity as chapter 7 trustee in the Oahu Sugar case, and in order to facilitate a resolution of these issues, the court modified the automatic stay in this case to allow KLLLC, the parent company of Oahu Sugar and the Debtor, to pursue the FFIC insurance policies for claims

---

[1]     Roderick Johnston and Rosalyn Johnston.

[2]     *In re Oahu Sugar Company, LLC*, Case No. 05bk15100 (Bankr. N.D. Ill. filed Apr. 19, 2015) (Barnes, J.).

[3]     Unlike appeals brought under the Federal Rules of Appellate Procedure, *see* Fed. R. App. P. 41, there is no process for a mandate under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As such, and given that this court is both the busiest bankruptcy court by number of cases in the country and this is a self-scheduling jurisdiction, unscheduled dispositions on appeal may lay idle if no party acts. Under the Local Rules of the Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), it falls on the parties to bring idle matters to the attention of the court. Local Rule 9013-1(I).

that the United States had against KLLLC stemming from the environmental response.  Order Modifying Automatic Stay [Dkt. No. 212] (the "KLLLC Stay Relief Order").  Shortly thereafter, Oahu Sugar's bankruptcy case was closed.

Despite that modification of the stay, the Claimants and their claims against the Policies remained stayed.  As a result, the Claimants have filed the Motion at bar.

The Motion is once again opposed by the Objecting Parties.  Objection of Kaanapali Land LLC to Motion for Relief from the Automatic Stay as to Certain Asbestos Claimants [Dkt. No. 233] (the "KLLLC Objection"); United States' Response re: Motion for Relief from Automatic Stay as to Certain Asbestos Claimants [Dkt. No. 234] (the "United States Response"); Fireman's Fund's Opposition to the Motion for Relief from the Automatic Stay as to Certain Asbestos Claimants [Dkt. No. 235] (the "FFIC Objection" and together with the KLLLC Objection and the United States Response, the "Objections").

First, the Objecting Parties each argue that the Claimants may have claims against the policy issued by FFIC, which policy the Objecting Parties wish to use to settle the United States' claim against KLLLC and Oahu Sugar.  Second, KLLLC argues that the Motion should be denied because the Claimants have not filed claims in this case.  Third, KLLLC and FFIC argue that determination of which of the Policies apply to each of the Claimants cases will be a burden to the Trustee.  Last, KLLLC and FFIC argue that the Claimants have not satisfied all of the so-called *Fernstrom* factors.

FFIC also seeks specific language in any order modifying the stay that will allow FFIC to conduct an examination under Rule 2004 of the Bankruptcy Rules and granting leave to bring declaratory judgment adversary proceedings against the Trustee and the Claimants.  Last, FFIC also asserts that any such order should grant the Trustee time to determine which of the Policies applies to each of the Claimants' claims and to allow the issuers of any of the Policies implicated by the Claimants' claims to get counsel to defend in the state court.

The Claimants filed an omnibus reply to the Objections.  Omnibus Reply in Support of Motion for Relief from the Automatic Stay as to Certain Asbestos Claimants [Dkt. No. 240].  The Trustee responded to the FFIC Objection, Response of Alex Moglia, as Trustee, to Fireman's Fund's Opposition to the Motion for Relief from the Automatic Stay as to Certain Asbestos Claimants [Dkt. No. 239], and FFIC filed a reply directed to the United States Response.  Fireman's Fund's Reply to United States' Response Re: Motion for Relief from Automatic Stay as to Certain Asbestos Claimants [Dkt. No. 241].

The Motion is fully briefed and ripe for determination.  This Memorandum Decision constitutes the court's determination of the Motion.  In reaching the conclusions set forth herein, the court has taken into account all of the foregoing history and filings, including any and all exhibits submitted in conjunction with the foregoing.  Though the foregoing filings do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this case.  *See Levine v. Egidi*, Case No. 93 C 188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

4

APPLICABLE LAW

Relief from stay is a statutory mechanism.  11 U.S.C. § 362(d).  Section 362(d) provides, in pertinent part, that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization;

11 U.S.C. §§ 362(d)(1), (2).

In any proceeding under section 362, the burden of establishing that the debtor lacks equity in the property falls on the movant.  11 U.S.C. § 362(g)(2).  On all other issues, the party opposing the relief bears the burden.  11 U.S.C. § 362(g)(1).

"While … Congress intended that the automatic stay have broad application, the legislative history to [section 362] clearly indicates that Congress recognized that the stay should be lifted in appropriate circumstances."  *Holtkamp v. Littlefield* (*In re Holtkamp*), 669 F.2d 505, 508 (7th Cir. 1982).  That legislative history states, in pertinent part, that:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977).

Though section 362(d) appears to compel relief if its factors are met, the Seventh Circuit has stated that "[a]lthough this section is written in mandatory terms, the bankruptcy court has discretion whether and to what extent it will grant relief from the stay …."  *In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998).

This discretion and the balancing anticipated in the legislative history come together when a party seeks relief from stay for cause under section 362(d)(1).  *Izzarelli v. Rexene Prods. Co.* (*In re Rexene Prods. Co.*), 141 B.R. 574, 576 (Bankr. D. Del. 1992) ("This theme is echoed in the equitable balancing test most courts apply to determine if cause exists to lift the stay [under section 362(d)(1)] to allow pending litigation to proceed or continue in another forum.") (*citing Fernstrom*, 938 F.2d at 735).

5

Section 362(d)(1) states that "for cause" shown, which includes "lack of adequate protection of an interest in property of such party in interest," relief from the stay shall be afforded. Cause has never been clearly defined by the courts and it is usually "determined on a case-by-case basis." *In re Wilson*, 536 B.R. 218, 222 (Bankr. N.D. Ill. 2015) (Black, J.) (*quoting Fernstrom*, 938 F.2d at 735 (*citing In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990))).

Section 362(d)(2), on the other hand, directs the court to grant relief from stay if both of its criteria—that the debtor does not have an equity in the subject property and that such property is not necessary to an effective reorganization—are met. In a chapter 7 case, there is no prospect of reorganization. *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990) ("Because this is a liquidation under Chapter 7, there will be no reorganization. The only question faced by the bankruptcy court, then, was whether the debtor had equity in the property."). Thus, in this chapter 7 case, equity is the sole matter for the court's determination under section 362(d)(2).

## STANDING

Before considering the crux of the Claimants' arguments, two issues of standing must first be addressed. First, KLLLC argues that the Claimants lack standing to the bring the Motion. Second, the Claimants challenge FFIC's standing in the matter. The court addresses each issue in turn.

A.     <u>The Claimants' Standing</u>

KLLLC argues that the Claimants lack standing to bring the Motion as none of the Claimants have filed proofs of claim in this case. This argument is without merit. True, to seek relief in a bankruptcy matter, an entity must establish that it has standing to do so. *See In re C.P. Hall*, 750 F.3d 659, 661 (7th Cir. 2014); *Gecker v. Marathon Fin. Ins. Co. (In re Auto. Prof'ls, Inc.)*, 389 B.R. 630, 632 (Bankr. N.D. Ill. 2008) (Doyle, J.) ("Every plaintiff in federal court must establish that it has standing to assert its claims."). The Claimants' standing, however, is not subject to legitimate question.

As noted above, relief from stay is a statutory mechanism and that statute specifically allows "a party in interest" to seek relief from stay and nowhere limits itself to those who filed claims. 11 U.S.C. § 362(d). While the Bankruptcy Code does not define who a party in interest may be, the courts have made clear that a movant only needs to establish a "colorable claim" against property to seek relief from the automatic stay. *Vitreous Steel*, 911 F.2d at 1234; *Rinaldi v. HSBC Bank USA, N.A. (In re Rinaldi)*, 487 B.R. 516, 530 (Bankr. E.D. Wis. 2013).

Nowhere in the Bankruptcy Code are such parties in interest limited to those who have filed proofs of claim. Congress knew the difference between parties in interest and creditors when it enacted the Bankruptcy Code and that distinction is clear throughout. *See, e.g.*, 11 U.S.C. § 1109(b) ("a party in interest, including … a creditor … may raise and be heard on any issue" in a chapter 11 case); *see also In re Sweports, Ltd.*, 476 B.R. 540, 542 (Bankr. N.D. Ill 2012) (Goldgar, J.) (discussing whether a debtor can seek relief from stay).

The Seventh Circuit has repeatedly "held that neither the failure to file a proof of claim nor the automatic stay of section 362(a) precludes an action against a debtor to obtain recovery from the

6

debtor's insurer." *In re Shondel*, 950 F.2d 1301, 1307 (7th Cir. 1991) (*citing Fernstrom*, 938 F.2d at 734 (*quoting In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991))).

Instead, the Seventh Circuit has said that an entity has standing if it has or will suffer an injury redressable by or as a result of a court's ruling. *Milwaukee Police Assoc. v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). Here, the Claimants have sufficiently shown that the Debtor's automatic stay is preventing them from proceeding against nondebtor third parties. As more fully explored under the third *Fernstrom* factor, the Claimants have a colorable claim.

The Claimants therefore have standing to pursue the Motion.

B.     FFIC's Standing

FFIC's standing is not, however, so simple. Unlike 11 U.S.C. § 1109(b), applicable in chapter 11 matters as noted above, no statute confers on FFIC a statutory right to be heard in this chapter 7 matter and FFIC can show no redressable injury to establish that it is a party in interest.

As noted above, a party must suffer an injury redressable by or as a result of a court's ruling to have standing. *Milwaukee Police Assoc.*, 863 F.3d at 639. A mere interest in the outcome or in the underlying law "does not equal an injury." *Id.*

Here, while FFIC certainly has shown that it has an interest in the outcome, it has not shown that it has or will suffer an injury as a result of the court's ruling. There is no question that FFIC derives a benefit from the continuation of the stay—that of not having to resolve its contractual liabilities. Such a benefit is ancillary to the purpose of the statute, however. FFIC is not the debtor in this case and its attempt to shelter under the automatic stay is misplaced. That such shelter will be lost if the court grants relief from stay is not enough to confer standing onto FFIC.

The Seventh Circuit said as much in *C.P. Hall* when facing an issue similar to the one raised here. There the Seventh Circuit noted that in order to become a party to a bankruptcy proceeding, a party must show both Article III standing and that "a legislatively conferred cause of action encompasses its claim." *C.P. Hall*, 750 F.3d at 660–61 (internal quotations omitted); *see also In re New Era, Inc.* 135 F.3d 1206, 1210 (7th Cir. 1998). The *C.P. Hall* court found that the debtor's excess insurer was not amongst those having a right to appear and be heard in a bankruptcy case. *C.P. Hall*, 750 F.3d at 663.

FFIC attempts to distinguish *C.P. Hall* by likening its situation instead to that in *In re Global Industrial Technologies*, 645 F.3d 201 (3d Cir. 2011) (*en banc*). The Seventh Circuit in *C.P. Hall* distinguished *Global Industrial*, however. *Global Industrial* involved a settlement between claimants and the Trustee that "altered the terms of the contracts between the insurance companies and the debtor." *C.P. Hall*, 750 F.3d at 662. Such an injury conferred standing.

As in *C.P. Hall*, however, where there is no such injury, there is no standing. FFIC suffers no injury and thus lacks standing to be heard in this matter.

Because FFIC's arguments are so intertwined to those made by KLLLC (the only other truly objecting party), the result here mostly would not change. Most issues raised by FFIC would have to be determined anyway. In the unlikely event the District Court concludes that FFIC has standing

7

here, out of an abundance of caution, the court considers all of FFIC's arguments. The court thus addresses FFIC's arguments despite FFIC's lack of standing.

DISCUSSION

While a new motion with mostly new movants, the Motion is similar in form and substance to the Prior Motion. This presents an interesting dilemma, as the Prior Motion remains unresolved after remand. As no party has brought the Prior Motion or the Appellate Opinion back on for consideration by this court, the court must presume that the Prior Motion has been abandoned in favor of this Motion.[4] The overlap in issues is, however, undeniable and this court cannot ignore the existence of the Appellate Opinion. Thus, rather than determining the Prior Motion as remanded, the court turns to this Motion and what are essentially the same issues of the Prior Motion, but still in light of the District Court's concerns.

Having addressed the gatekeeping concerns and objections regarding standing and considered the basic elements of section 362(d), the court first takes up whether the Claimants have established cause under section 362(d)(1) by considering together the *Fernstrom* factors and the District Court's reliance on the same. The court then considers whether the Claimants have established the required elements of section 362(d)(2).

Having concluded that the Claimants have, in each instance, made their case, the court next turns to various other arguments and requests raised by FFIC. Finally, the court briefly considers the issue of priority of payment from insurance proceeds.

A.   Section 362(d)(1), the *Fernstrom* Factors and the District Court's Reliance on the Same

As discussed above, the court takes up this matter in an awkward procedural posture. The Prior Motion sought relief under both sections 362(d)(1) and (2), but the Prior Order granted relief under section 362(d)(1) alone without any discussion of section 362(d)(2). The District Court therefore rightfully limited its review to whether the bankruptcy court erred in concluding that cause existed.

The District Court was not wrong to have done so. In taking up that limited issue, the District Court applied the so-called *Fernstrom* factors. As this and other courts have noted, however, the *Fernstrom* factors can be problematic in application. *In re Robinson*, 577 B.R. 294, 306 (Bankr. N.D. Ill. 2017) (Barnes, J.) (*citing Fernstrom*, 938 F.2d at 735).

The *Fernstrom* factors are a three-part test stated by the Seventh Circuit in *Fernstrom*, 938 F.2d at 735, but as used earlier by the District Court in another case. *In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986). In *Pro Football Weekly*, the District Court considered whether a bankruptcy court was correct to lift the stay to "allow continuation of a pending lawsuit." *Id.* The District Court adopted a test from an earlier bankruptcy court decision, asking whether:

a) Any "great prejudice" to either the bankrupt estate or the debtor will result from continuation of a civil suit,

---

[4]   Despite being given an opportunity at the Hearing, no party objected to this course of action.

8

>    b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
>
>    c) the creditor has a probability of prevailing on the merits of his case.

*Id.*; *see also Fernstrom*, 938 F.2d at 735 (adopting same).

As is clear from the wording of the three-factor test, the District Court's formulation of "cause" was derived from the facts and circumstances presented in that case, namely the "continuation of [a] civil suit" against the debtor. *Robinson*, 577 B.R. at 306. When the Seventh Circuit in *Fernstrom* attempted to apply the *Pro Football Weekly* test to a request to pursue insurance proceeds, the result demonstrates that the test is better limited to just those facts and circumstances.

First, the Seventh Circuit noted in *Fernstrom* that a request to continue a suit against a third party (not the debtor) is considered an exception to the three-factor test. *Fernstrom*, 938 F.2d at 736. Instead, in such instances, the Circuit suggested that the court should ask if the third-party suit would result in a judgment or finding against the debtor or whether the litigation would result in irreparable harm to the debtor, the bankruptcy estate or the reorganization plan. *Id.*

Still, the Seventh Circuit in *Fernstrom* attempted to apply the *Pro Football Weekly* test to just such a request. As to the first factor, the Circuit concluded that "debtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors." *Id.*

Having so concluded, the Seventh Circuit determined that "[t]he other two prongs of the balancing test identified in *In re Pro Football Weekly* … merit little additional discussion." *Id.* As to the second factor, the Circuit considered that forcing a party to proceed in the bankruptcy court would prejudice that party when doing so would cause duplication and expense. *Id.* As to the third factor, the Circuit concluded that it was satisfied as the action was "not frivolous." *Id.* at 737. This clearly demonstrates that this court has previously observed, that "the three-factor test is inartful outside of the circumstances for which it is intended." *Robinson*, 577 B.R. at 826.

Still, as the *Fernstrom* factors are the only cogent test for cause in the Seventh Circuit, the factors are regularly applied outside their original context. Here, the District Court applied the *Fernstrom* factors to the request in the Prior Motion. This court must therefore do likewise now.

In applying the *Fernstrom* factors, the court is mindful that KLLLC has argued that the Claimants should not qualify for any relief as there is no pending civil action. Citing section 362(d)(1)'s legislative history, KLLLC suggests in a footnote that because most of the Claimants have not filed lawsuits naming the Debtor, the Motion is "inconsistent with the paradigm case under Section 362(d)(1)." KLLLC Obj., at p. 1, n.1.

This argument is simply misplaced. The automatic stay is broader than as applied to existing lawsuits and nothing in section 362(a) (the automatic stay itself) or section 362(d) (relief from the stay) limits a party to seeking relief from stay when a contemplated suit has not yet been brought. True, *Fernstrom* seems to apply a test meant for existing suits in a broader context, but that serves to demonstrate not that cause cannot be demonstrated where the limited circumstances of *Pro Football Weekly* do not exist, but rather that courts should be flexible in weighing cause irrespective of the circumstances.

9

KLLLC clearly does not think much of this argument, relegating it to a footnote. *See Nat'l Fair Housing Alliance v. Deutsche Bank*, Case No. 18 C 0839, 2018 WL 6045216 at *2 (N.D. Ill. Nov. 19, 2018) (*citing Bakalis v. Golembeski*, 35 F.3d 318, 326 n.8 (7th Cir. 1994)) ("Arguments appearing only in footnotes are waived … ."). The court thinks even less of it. Nothing in the statute limits the Claimants from seeking the relief they seek in the Motion under the circumstances at bar. KLLLC's footnote objection in this regard is overruled.

That considered, the court takes up each of the *Fernstrom* factors, in turn.

1. *Prejudice*

As to the first *Fernstrom* factor, there is no "great prejudice" to the bankrupt estate or the Debtor if the Claimants are allowed to continue their actions nominally against the Debtor.

As noted above, in *Fernstrom*, the Seventh Circuit found that debtors "suffer little prejudice when they are sued by plaintiffs who seek nothing more than a declaration of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors." *Fernstrom*, 938 F.2d at 736. The Circuit noted that the determination of liability "will neither deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding," but instead "will only operate as a prerequisite to recovery against another entity." *Id.* at 734 (internal quotations omitted).

This is a chapter 7 case, not a chapter 11 case as in *Fernstrom*. Questions of great prejudice to the Debtor are inapplicable. The Debtor in this chapter 7 case is a corporation and therefore is not eligible for a discharge. 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a discharge, unless the debtor is not an individual"). Once this case is closed, the Claimants will no longer be restrained by the automatic stay and may pursue the Debtor. Thus, harm to the Debtor is simply not a factor.

Further, there is no reorganization plan to prejudice. What exists is a very old chapter 7 liquidation in which no concrete plans to monetize the affected Policies have been advanced. It is difficult to conclude prejudice where there is nothing to prejudice. Indeed, the Trustee is not objecting to the Motion.

What remains is prejudice to the bankruptcy estate itself. FFIC and KLLLC argue that there will be great prejudice to the bankrupt's estate in that allowing these claims will deplete insurance for the rest of the asbestos claimants (or, in KLLLC's case, for themselves) and that the proverbial floodgates will open for the rest of the claimants that are affected by asbestos-related injuries. What such parties are actually concerned about is, however, clearly whether the anticipated settlement of liability of third parties—namely KLLLC and Oahu Sugar, parties that are not the Debtor and are not a part of the bankruptcy estate—will be affected.

FFIC's and KLLLC's argument is not compelling.[5] While there may be in excess of $100 million in insurance coverage, the Trustee has been unable to determine the true extent of the

---

[5] None of the allegedly injured non-moving asbestos claimants filed objections to the Motion. Further, neither FFIC nor KLLLC addresses that the pool of insurance may already be diminishing as, after the Prior Order's appeal and reversal, the automatic stay has been lifted to allow KLLLC to pursue some of the very insurance money each argue must be protected for other claimants. *See* KLLLC Stay Relief Order. The door has already been opened for some parties to pursue these funds and those with access cannot use

10

coverage or even which of the Policies apply to which claims. At the Hearing, the Trustee's counsel noted that discussions with insurers to settle these asbestos claims have not born fruit and that modifying the automatic stay would be consistent with settlement efforts. *See* Tr., at pp. 7–9 (April 13, 2020).

FFIC cites to three main cases in support of their prejudice argument: *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616 (Bankr. S.D.N.Y. 2009); *In re Gatke Corp.*, 117 B.R. 406 (Bankr. N.D. Ind. 1989); and *In re Sunland, Inc.*, 508 B.R. 739 (Bankr. D.N.M. 2014). None of the three are persuasive.

In *Bally*, the bankruptcy court denied stay relief to asbestos-related claimants in a chapter 11 case. *See Bally*, 402 B.R. at 622–24 (applying a 12-factor test outlined in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990)). Not only is *Bally* based on Second Circuit law and thus is not binding on this court, it involved a chapter 11 restructuring, a class-certification and no applicable insurance. *Id.* The *Bally* facts are too foreign to be useful here.

*Gatke* also involved asbestos-related claimants. *See Gatke*, 117 B.R. at 407. While *Gatke* is from within this Circuit, it predates *Fernstrom*. As in *Bally*, *Gatke* had a reorganization plan at stake. *Id.* Unlike *Bally*, such plan turned on insurance coverage. *Id.* While *Gatke* contains some discussion of a need for the equitable distribution of limited insurance funds, the court there was clearly convinced that the bankruptcy reorganization would be advanced by denying stay relief. The facts here bely such a conclusion. *Gatke* presents no compelling reason to stray from the later Seventh Circuit precedent in *Fernstrom*.

In *Sunland,* a New Mexico bankruptcy court denied stay relief involving insurance proceeds. *Sunland*, 508 B.R. at 743–46. The *Sunland* court denied relief in the face of a clearly delineated and ongoing effort of the trustee to buy back insurance policies and pay off claims from the buyback pool. *Id.* at 746. The *Sunland* ruling came near the beginning of the case, less than a year after the bankruptcy filing, and the court stated it would revisit its ruling if the trustee's efforts did not succeed in a timely manner. *Id.* Here, the Debtor's case is not at the beginning, but near the end. There is no clearly delineated and ongoing treatment of the Policies. *Sunland* is similarly unpersuasive.

For the reasons stated above, the court finds no prejudice to the Debtor or the bankruptcy estate caused by lifting the stay for the Claimants, let alone "great prejudice." The Claimants have satisfied this factor.

2. *Balancing the Hardships*

The second factor under the *Fernstrom* analysis concerns balancing the hardship of the movants with the hardship to the debtor and whether one "considerably outweighs" the other. *Fernstrom*, 938 F.2d at 735.

---

the automatic stay to fend off other creditors. One can simply not put that proverbial genie back in the bottle.

Since the Prior Motion was filed, five years have passed where the Claimants have been unable to seek monetary compensation for their alleged injuries. The alleged injuries are reportedly ongoing and painful. One of the Claimants has died in the interim and the others have been waiting for a total of thirteen years for some resolution in the bankruptcy case. During that wait, while the Claimants have been able to pursue their claims against other parties, they are apparently no closer to resolving their claims against the Debtor than in 2007.

In *Fernstrom*, the Seventh Circuit found that continuing the automatic stay would greatly prejudice the movant, partially due to the advanced stage of litigation. *Fernstrom*, 938 F.2d at 736, 737. There the Circuit seemed focused on the waste of duplicating already advanced litigation in the bankruptcy forum. *Id.*

*Fernstrom* did not address, nor could it reasonably have anticipated, the damage done to this court's ability to hear such matters by *Stern v. Marshall* and its progeny. In *Fernstrom*, the Seventh Circuit simply assumed that it was possible to duplicate the litigation in the bankruptcy forum. *Id.*

Such is not the case in today's world. This court's ability to act as a centralized forum for disputes that touch and concern a bankruptcy case is greatly diminished. The insurance coverage litigation simply cannot be duplicated here. True, while a bankruptcy case might nonetheless allow for an amalgamation of claims and creative gathering of resources to satisfy them, no such plans exist here.

This is a chapter 7 bankruptcy with limited remaining assets. If the stay were lifted to allow the Claimants to pursue the Debtor's insurers, at most the Debtor would have to be involved in determining which insurer, if any, should defend each claim. This is something the Debtor would have to do no matter where and when[6] the Claimants pursue their claims. Taking into account such equitable considerations, "[t]he equities weigh heavily in favor of [the Claimants]" who should be allowed to "establish liability in the tort system" so that they may recover any damages they have suffered against the Debtor's proper insurer. *In re Budd Co. Inc.*, Case No. 14 B 11873, 2016 WL 556287, at *1–2 (Bankr. N.D. Ill. Feb. 10, 2016) (Schmetterer, J.) (*citing Fernstrom*, 938 F.2d at 735).

In weighing the harm to the Claimants of being denied redress versus the harm to a virtually nonexistent process here, the actual hardship to the Claimants considerably outweighs any ephemeral harm to the chapter 7 case or the Debtor. The Claimants have satisfied their burden with respect to the second *Fernstrom* factor.

    3.    *The Claimants' Probability of Prevailing on the Merits*

The third and final factor in the *Fernstrom* analysis is whether "the creditor has a probability of prevailing on the merits." *Fernstrom*, 938 F.2d at 735.

The requisite showing needed for a probability of prevailing is very slight. *See Vitreous Steel*, 911 F.2d at 1234; *Rexene Prods.*, 141 B.R. at 578. Arguably, such a consideration goes beyond the summary nature of a stay relief proceeding. *Vitreous Steel*, 911 F.2d at 1232 ("[T]he issues considered

---

[6] As noted above, the Debtor will not receive a discharge and thus when this case is closed, the Claimants can file their claims against the Debtor and such a determination will have to be made.

12

at a [section 362] hearing are limited strictly to adequacy of protection, equity, and necessity to an effective reorganization.").

In *Fernstrom*, the Seventh Circuit found this factor satisfied where the contemplated action was "not frivolous." *Fernstrom*, 938 F.2d at 736.

Asbestos litigation is complex, as can be seen by the numerous defendants in each of the Claimants' state law complaints. All the Claimants have filed state court cases alleging asbestos-related injuries. One of those cases is set to go to trial within the year. The other six have apparently "proceeded and resolved" either through a judgment or settlement, suggesting they have probable claims as well. At the very least, the court can conclude that the underlying claims are not frivolous and that the Claimants have colorable claims.

The Claimants have therefore established at least the requisite probability of prevailing on the merits. Nothing more is needed for this court's determination of their claims in the state court.

For all the reasons stated above, after applying the *Fernstrom* factors, the Claimants have shown cause under section 362(d)(1) to lift the automatic stay for the limited purposes requested.

B. <u>Section 362(d)(2) and Equity in the Property</u>

The Claimants also move for relief from the stay under section 362(d)(2). Relief under section 362(d)(2) normally requires a showing of two elements: that the debtor does not have equity in the subject property and that the subject property is not necessary for an effective reorganization. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76 (1988).

As previously discussed, here there is no reorganization. In a chapter 7 case, the only question before the court is "whether the debtor [has] equity in the property." *Vitreous Steel*, 911 F.2d at 1232. As a result, the Claimants need only show that there is no equity in the Policies in order to succeed.

What constitutes the property at issue here is not entirely clear. There is no question that "[a] policy of insurance is an asset of the estate." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989). However, the actual insurance payouts thereunder are not always property of the estate. *See Stinnett v. Laplante (In re Stinnett)*, 465 F.3d 309, 312–14 (7th Cir. 2006) (determining whether disability insurance payments are property of the estate).

The court must ask "whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *Id.* (*quoting In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993)). "[W]hen the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate." *Edgeworth*, 993 F.2d at 56. That is true, for example, for a "typical liability policy," because "[t]hose proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract." *Id.*

The Claimants assert that the liability policies in question here are unlike those at bar in *Edgeworth*. As the Fifth Circuit there stated, "[e]xamples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance." *Edgeworth*, 993 F.2d at 56 (citations omitted). This assertion is enough to satisfy the Claimants' initial burden under the statute as it establishes a colorable claim to relief under section 362(d)(2). In turn, neither the Trustee nor

13

any of the Objecting Parties offer an explanation as to how the Debtor would be entitled to any insurance proceeds or has any claim at all to the insurance proceeds under the Policies.

As a result, the court must conclude that for the purpose of determining this Motion, the Debtor lacks equity in the payouts under the Policies. The Claimants have established grounds for relief from stay under section 362(d)(2).

C. FFIC's Litigation Defense Arguments and Alternative Requests

FFIC makes additional arguments that bear a response. FFIC argues that due to the length of this bankruptcy case, they have neither the counsel ready nor an existing structure within which to defend the Claimants' claims. It further argues that it would be forced to defend these claims as an excess insurance carrier because the primary insurers have not yet been identified. FFIC cites no authority to support these arguments and offers no evidence in support of them. At best, the court might conclude that it *may* be inconvenient to defend the claims.[7]

Defending any litigation is burdensome and FFIC presents no argument that this is a unique situation. In fact, this is exactly what insurance exists to do. As noted above, FFIC cannot shelter under the Debtor's stay. For good reason, the *Fernstrom* factors weigh prejudice between the Debtor and its bankruptcy estate and the movants seeking relief. Third parties such as the Debtor's insurer are simply outside the scope of the inquiry. *Fernstrom*, 938 F.2d at 735. These arguments are not well taken.

FFIC also argues that, if the stay is lifted, it will need to litigate against the Trustee to establish coverage. FFIC states that this would place the Trustee "in the difficult position of having to litigate the coverage dispute and the [l]awsuit while simultaneously administering the estate." *See Sunland*, 508 B.R. at 743–44. The Trustee, however, is not objecting here and FFIC's attempt to assert these issues on the Trustee's behalf is disingenuous.

Further, even if the Trustee had objected on this basis, as discussed previously, the *Sunland* case was in the early stages, with presumably more for the trustee to accomplish, unlike here where the case is winding down. *Id.* The United States reports that it recently reached a "recommended Agreement in Principle" with KLLLC and Oahu Sugar for a dollar amount to resolve the United States' claims. United States' Resp., at p. 2. Once the United States settles its claims, there will be little else for the Trustee to do in this case besides work on resolving the Claimants' and other asbestos-related claims.

Regardless, the Trustee and the Debtor's insurers will need to determine coverage no matter how the Claimants' claims are decided. Applying FFIC's argument in a broader sense, "[v]irtually all litigation could be said to deplete the resources of the debtor or debtor's estate." *In re Webster Place Athletic Club, LLC*, Case No. 18 B 30466, 2019 WL 2543409, at *4 (Bankr. N.D. Ill. June 18, 2019) (Schmetterer, J.). This court agrees with Judge Schmetterer that "[t]hat does not mean that issues arising in litigation can never be decided." *Id.* FFIC's reliance on *Sunland* and its arguments regarding depletion of the bankruptcy estate is not convincing.

---

[7] It is unclear whether FFIC is in fact implicated at all, as there has to date been no determination by the Trustee or FFIC that the Claimants' claims invoke the Policies issued by FFIC.

14

FFIC also asks that the court grant it permission to examine the Trustee and others under Bankruptcy Rule 2004, that the stay be lifted to allow a declaratory judgment action against the Trustee, that the court defer the order lifting the stay for 120 days, that the stay not be lifted for Larry Walker, one of the Claimants, and that any order require the cooperation of the Trustee with FFIC.

The court agrees with the Trustee, who participated in briefing mainly to object to these extraneous requests, that such additional relief and conditions are inappropriate here.

A request for discovery via Bankruptcy Rule 2004 must be made by motion, *see* Fed. R. Bankr. P. 2004(a)(1); *In re Cambridge Analytica LLC*, 600 B.R. 750, 752–53 (Bankr. S.D.N.Y. 2019) (discussing the purpose and limits of Bankruptcy Rule 2004 examination), and served on the entity to be examined. Local Rule 2004-1.[8] FFIC requests this discovery only through an objection to a motion. FFIC fails to name the third parties it seeks to subpoena, let alone serve them. It is unclear what purpose such an examination would serve and whether FFIC would have standing to pursue it. FFIC should make the request in the manner and with the support required by the applicable rules and let the court take up the issue in the proper proceeding.

Similarly, a request for relief from the automatic stay must also comply with the statute and the rules, which require, at the very least, notice and a hearing. 11 U.S.C. § 362(d); Fed. R. Bankr. P. 4001. The court declines to *sua sponte* expand the scope of the Motion, the only proper request before it, to include relief in favor of FFIC to pursue independent litigation.

The court also sees no good reason to defer the modification of the automatic stay for 120 days. While FFIC has offered examples of other courts, outside of this Circuit, implementing such delays, none of the examples offered explain the reason for such a deferral. While the trial for Mr. Walker is quickly approaching, it is for the court conducting that trial to protect the parties therein from prejudice. This court has been given no reason to assume that the state court will not act accordingly. There is simply no good cause shown for the court to further delay a matter that has already been pending for years.

Finally, the court has been given no reason to assume that the Trustee is incapable of resolving the issues the relief granted herein might raise. As noted, the Trustee does not object to the Motion and FFIC's attempts to assert the Trustee's concerns for him is inappropriate.

D.   Priority of Payment of Insurance Proceeds

One final "argument" bears consideration, albeit only in passing.

The United States argues that the proposed settlement of its claims against KLLLC and Oahu Sugar depends upon the availability of insurance coverage of the Policies issued by FFIC. It further asserts that liability may arise under the Federal Priority Statute, 31 U.S.C. § 3713, and the

---

[8]   The court presumes for this discussion that Bankruptcy Rule 2004 would apply and not some form of prelitigation discovery under Fed. R. Civ. P. 27. FFIC has taken none of the required steps for either form of discovery relief.

15

Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001 *et. seq.*, should the insurance proceeds be used for other purposes.

The United States asks that any order modifying the stay in this case provide that any recovery under the FFIC Policies be paid only after the payment of the settlement between the United States, FFIC, Oahu Sugar and KLLLC. At the same time, the United States, immediately after briefing the issue, indicated that it is not seeking a ruling from this court on the priority of the insurance proceeds.

The United States cannot have it both ways. The inclusion of such language in an order modifying the stay would be for all practical purposes a determination of the priority of claims in the Policies. *Id.* As the United States has provided no support for its request and has, as noted, indicated it is not seeking a determination from the court, the court will not entertain this argument.

## CONCLUSION

For all of the foregoing reasons, the court concludes that, in the limited respects discussed herein, the Motion is well taken and will be, by separate order entered concurrently herewith, granted.

Dated: July 21, 2020                                          ENTERED:

 

_____
Timothy A. Barnes
United States Bankruptcy Judge

16